## WARD v. GEE. *
### No. 1134.

Court of Civil Appeals of Texas. Eastland.
June 9, 1933.

Oxford & McMillan, of Stephenville, and Oscar Calloway, of Comanche, for appellant.

Chandler & Keith, of Stephenville, for appellee.

FUNDERBURK, Justice.

A. P. Ward, alleging himself to be the owner of a business located in Dublin, Tex., and conducted by C. R. Gee under the name of "C. R. Gee Feed & Grocery," brought this suit against said Gee to recover the title to and possession of said business, including the stock of goods, fixtures, moneys, etc., used in and belonging to same. Gee was alleged to have been placed in the sole management of said business for plaintiff at an agreed salary of $90 per month, but that he subsequently denied plaintiff's rights, set up claim to the business as his own, and excluded plaintiff therefrom, etc. The defendant, Gee, in addition to defensive pleas, asserted a cross-action for damages for slander.

*Rehearing denied July 10, 1933.

Plaintiff filed a plea to abate the cross-action for misjoinder of causes of action and also urged a general exception to the cross-action. The plea in abatement and general demurrer having been overruled, the case was tried with a jury whose verdict was rendered in response to special issues submitted.

The jury by their verdict found: (1) That it was not agreed at the time the business was begun that it should belong to Ward; (2) that it was not agreed that Gee was to manage and operate the business for a salary of $90 per month; (3) that Ward told Wallace Reed "that he, plaintiff, was the owner of the business conducted by Gee and that Gee was hired by him to run the same"; (4) that Ward told S. B. Sitton "that he, plaintiff, was the owner of the business conducted by Gee and that Gee was hired by him to run the same"; (5) that said statements (that is, to Reed and Sitton) were false; (6) that Gee was thereby damaged "either in his business or reputation" (7) in the amount of $500 by reason of said statements; (8) that in making said statements Ward was actuated by malice; (9) and that plaintiff should pay $250 as exemplary damages. The judgment in accordance with the verdict denied plaintiff recovery and awarded defendant recovery against the plaintiff for $750 on the cross-action. Plaintiff has appealed.

■ The first assignment of error brings up for review the action of the court below in overruling plaintiff's plea to abate the cross-action. The suit involved an inquiry as to the ownership of the stock of merchandise, fixtures, money, etc., constituting the property and assets of the business. It therefore also involved, incidentally, the relations of both plaintiff and defendant to said business and property. The cause of action, if any, asserted in the cross-action, as will hereinafter be noticed, is construed to be one for slander of title to property. We believe it would come within the exception in R. S. 1925, art. 2017, in that it is a cause of action "arising out of or incident to, or connected with" the cause of action asserted by the plaintiff. We are therefore of opinion that the court did not err in overruling the plea in abatement.

■ Whether the cross-action constituted a sufficient pleading of recoverable special damages as against a general demurrer is a question of considerable difficulty and one which we have concluded, in view of the disposition necessary to be made of the case under other assignments, we need not determine. We have readily concluded that the pleading does not state any cause of action for defamation of character, or, in other words, for personal damages for injury to reputation. For one to state that a business conducted by another belongs to himself, and is being conducted for him by the person in charge, is not a defamation, however untrue the assertion may be. If actionable, the publication of such a statement must be as a slander of title to property. "Slander of title may be defined as a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or of some right of his causing him special damages." 37 C. J. 129, § 591. The law governing slander of title is in some respects different from the law of slander consisting of defamation. "The law relating to false statements concerning one's title to property," says Corpus Juris, "belongs properly to the law of deceit rather than that of defamation." 37 C. J. 130, § 593. As further said by the same authority: "Words spoken of property are not in themselves actionable. But the publication of false and malicious statements disparaging of plaintiff's property or the title thereto, when followed as a natural, reasonable and proximate result by special damages to the owner, are actionable." 37 C. J. 130, § 594. And again: "The utterance of a mere falsehood, however malicious, is not alone sufficient to sustain an action for slander of title or property; special damages are the gist of the action and without them the action cannot be maintained." 37 C. J. 132, § 600; Houston Chronicle Publishing Co. v. Martin (Tex. Civ. App.) 5 S.W.(2d) 170. From the above it naturally follows, as further stated: " * * * it is necessary to allege the facts which show wherein plaintiff has sustained damage, and such damage must be distinctly and particularly set out. An allegation of loss in general terms is not sufficient." Id., § 609. Two other applicable principles are: (1) "There can be no recovery except for such damages as are the proximate result of the slander." Id., 136, § 621. (2) "Consequential mental distress is not an element of recoverable special damages." Id.

Tested by these principles, if the cross-action states a cause of action at all it is for slander of title, the damages being confined to the injury, if any, of defendant's business. The injury, if any, to his credit is but evidentiary on the issue of injury to his business. With these observations, made mainly in view of another trial, but having some bearing upon questions hereinafter discussed, we pass over the question of the sufficiency of the pleading.

■ If our conclusion be correct that the cross-action was, as a pleading, insufficient to state a cause of action for defamation or injury to the defendant's reputation, then the submission of special issue No. 6 was erroneous. That issue called for a finding of whether, by the alleged false statements, defendant was damaged "either in his business or reputation." It thus appears that

the jury's affirmative answer to that issue may have been based wholly upon a finding of damages to defendant's reputation. If so, of course their answer would have been the same, though they may have found no damage to defendant's business. The result would be that the judgment must depend for support upon an issue not made by the pleadings. No objection in this respect was made to the submission of the special issue, but we call attention to same in view of another trial.

It is assigned as error, however, that there was no evidence of damage to the reputation or business of defendant, and. hence special issues Nos. 6 and 7 should not have been submitted. Sufficient has already been said to show that it is wholly immaterial whether there was any evidence of damage to defendant's reputation. Such evidence without pleadings to support same would be wholly unavailing.

We are of opinion that there was no evidence justifying submission to the jury of an issue of injury (and therefore of damages) to defendant's business. Defendant testified that after the statements were made his credit was impaired. Impairment of the credit of a merchant would, we think, be some evidence upon an issue of injury to his business. But there was a total want of evidence to show that the impairment of defendant's credit was the proximate result of the alleged false statements. The facts given in evidence by the defendant fully account for his impaired credit, independently of any effect to be given to the alleged statements. For instance, the defendant testified that his indebtedness was about $1,500 and the value of his stock about $600, and that he was dependent upon his credit to provide new stock. This condition alone, for which plaintiff was in no manner shown to be responsible, was sufficient to account for defendant's failure to obtain further credit. Again, the impairment of credit followed the filing of this suit, as well as the said statements. The same claim was made in the suit as in the statements. But for such impairment of credit as may have resulted from the institution and prosecution of the suit, there existed no right of action. The allegations made in the suit constituted a privileged matter. 36 C. J. 1250, § 223; Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833. Defendant testified: "Since this suit and these statements by Mr. Ward has been made concerning my business it has affected my credit rating," etc. No fact appears in the evidence to show that the suit may not have been the proximate cause of the impairment of credit or that the statements had any additional effect. Defendant had the burden of showing that the statements, independently of the effect of the prosecution of the suit, were the proximate cause of the damages claimed, and upon this point we think it must be said that there was no evidence.

The defendant, in order to account for plaintiff's having signed the lease upon which the business was conducted, which fact, unexplained, tended to support the contentions of the plaintiff, testified that plaintiff told him that he (plaintiff) had on deposit in the Dublin National Bank the sum of $10,000. Afterwards, over the objection of the plaintiff, defendant offered and the court admitted testimony of the cashier of the bank, to the effect that plaintiff, at the time, had no account with the bank. This testimony, we think, was clearly inadmissible and prejudicial. We know of no principle which would sanction a proposition that one party may testify to some statement of a collateral nature claimed to have been made by the adverse party and then offer testimony to discredit such adverse party by showing that the statement was untrue.

It is therefore our opinion that the judgment of the court below should be reversed and the cause remanded, which is accordingly so ordered.